REDMANN, Chief Judge,
dissenting.
The basic posture of this suit is that Southeast Equipment, a Louisiana corporation, demands mandamus against the Louisiana state police to return to Southeast a *1187 1979 Caterpillar 950 loader, serial no. 81J12566, that the police seized under a warrant. The affidavit by Trooper First Class Joseph Mura in support of that warrant’s issuance recites that
“On 11-13-81 ... Sgt. P. Hamburger was contacted by one Det. Perry Young of the Hillsbourgh County S[heriff’s] Offfice], Tampa, Florida. Det. Young advised that he had received information from one J.B. Cole W/M 38, of 501 E. Cooper St., West Memphis, Arkansas, that a 1979 Caterpillar Model 950 front end loader serial # 81J12566 was located in the New Orleans area at [a described location]. Det. Young further advised that said vehicle was reported stolen on 10-28-81 [the date of Southeast’s purchase of it in Florida from Hattaway as, purportedly, agent for Ogle] .... At approximately 4:50 p.m. this date [of the seizure] affiant telephonically contacted Mr. Cole. Subject identified himself as the general manager of the Razorback Concrete Co. of 501 E. Cooper West Memphis Arkansas. Mr. Cole stated that on 11-03-81 [six days after Southeast’s purchase and the report of the theft ] he had sent one E.J. Hart W/M 49 head mechanic of Razorback Concrete to New Orleans to inspect the above front end loader in order to purchase same. Mr. Hart did go and returned with his report on the vehicle and its serial No. 81J12566. Mr. Cole in the morning hours of 11-13-81 [the date of the affidavit, warrant and seizure] while in the process of purchasing said vehicle, contacted the Rozier Co. of Tampa FL. the original seller of said ve-hide. Rozier representatives advised that a vehicle of the description of the above front end loader had been stolen several weeks previously from the J.W. Conner and Son Construction Co. of Tampa FL. Mr. Cole advised that a short time later he was contacted by Det. Perry Young and reconfirmed the serial no. of said equipment.”
If Razorback Concrete in Arkansas so easily learned that it was a stolen loader that Southeast was trying to peddle just six days after buying it in Tampa, why did not Southeast learn that it was a stolen loader that Hattaway was trying to sell (apparently the same day it was reported stolen). (As an aside, one wonders why professional seller Hattaway, which proclaims itself “The Company Founded on Integrity,” did not know that the loader was stolen.)
The stipulation that Southeast did not know that the loader was stolen is not a stipulation that Southeast was in good faith for purposes of La.C.C. art. 524. Art. 521 declares one in good faith “unless he knows, or should have known, that the transferor was not the owner.” (Emphasis added.) There is no stipulation that Southeast should not have known that the loader was stolen. Judging from the quoted affidavit, the least that can be said is that Southeast does not appear to be a good faith purchaser.
Thus, even if Louisiana law governed the effect of the Florida sale of a thing stolen in Florida from a Florida owner, the judgment appealed from should be reversed and there should be judgment for the owner.[1]

. The intriguing question of La.C.C. 524’s application to one who in good faith bought from a merchant, knowing the merchant to be the agent for a non-merchant owner, need not be decided, because Florida law governs this case (and Southeast is not in good faith for Louisiana law purposes anyway). But one may note the importance of articles 2505 and 3013 in the overall scheme of the Louisiana Code.
Art. 2505 entitles a buyer, in case of loss of the thing because of a third person’s claim (“eviction”), to recover the price from the seller, “[e]ven in case of no warranty .... ”
On the other hand, art. 3013 provides that an agent has no responsibility “to those with whom he contracts, [except] when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers [of attorney].”
Thus the merchant would appear to be liable to return to the buyer the price of a stolen thing if the merchant were the seller, but not if the merchant were but the agent of the seller.
The legislature by the 1979 revision of the property articles did not intend to shield professional sellers from responsibility for selling stolen items, for that article is substantially identical to its source, art. 3507 as worded in 1870, and thus presumably not in conflict with article 2505 of the 1870 Code. The professional *1188 seller would thus owe the restitution of the price to the good faith buyer under art. 2505 (and thus the owner who pays it to the buyer under art. 524 would be entitled to reimbursement from the seller by legal subrogation to the buyer’s right against the seller, C.C. 2161(3)).
But if the professional seller who sells as agent can escape liability to the buyer to reimburse the price because of art. 3013’s general rule that the agent is not personally liable, the result would be that an owner who was forced to repay the price to the buyer under art. 524 would not get reimbursement by subrogation to the buyer’s right against the professional seller. The inconsistency would be that the courts would tell the owner (a) you must repay the buyer from “merchant, agent for X” under art. 524 because the buyer bought not from X but from the merchant, but (b) you cannot recover from the merchant because the buyer did not buy from the merchant but from X.
The intriguing question stated deserves a firmer factual foundation before being decided than that present here, where Southeast is not shown to be a good faith purchaser.